Thank you for your patience in waiting so long. May it please the Court, my name is Craig Harbaugh and I represent Arthur Patterson. There is no dispute that South Korea violated the extradition treaty by delaying the request well beyond the statute of limitations period. The question for this Court is whether the lower courts were wrong not to enforce the treaty. This Court should reverse the decisions below and hold that the extradition treaty's Article VI lapse of time provision is mandatory for three reasons. First, the common understanding of the Senate and the Executive at the time of advice and consent. Second, Korea's understanding at the time of negotiation. And third, the object and purpose of the lapse of time provision. First, with regard I think there's a five-year statute of limitations. Yes, Your Honor, there is. But he's being charged with murder, which in the United States in most jurisdictions doesn't have a statute of limitations. Your Honor, the applicable statute of limitations here was under Federal law, which based upon it being a non-first-degree murder was five years. What are they charging him with in Korea? Are they charging him with a non-first-degree murder? I wasn't clear on that. Your Honor, they charged him with murder. The extradition judge certified for second-degree murder only. The government had argued extensively that it was first-degree murder. If he's returned, what would he stand trial for? Homicide under Korean law. So that would be the equivalent of first-degree murder, not second-degree murder? No, Your Honor. Would it be second-degree murder? It would be second-degree. It's confusing. Does Korea have a first-second-degree distinction? They make the same distinction we do. They have something that's equivalent. The, Your Honor, the controlling determination here is what the extradition judge certified. Korea cannot prosecute him for any offense beyond what the extradition certified. Here, the judge was meticulous in concluding that it was solely, there was sole probable cause for second-degree murder, and that dictates what the applicable statute of limitations. Well, Korea's not going to prosecute him under U.S. law, are they? They are not, Your Honor, but the determination for purposes of Article 6 is U.S. law, and what the applicable statute of limitations applies. And so the magistrate judge concluded that this was second-degree murder, or there was only probable cause to establish second-degree murder, that there was an absence of premeditation, or no evidence supporting probable cause for premeditation, and therefore concluded that it was a five-year statute of limitations. Let me trace your argument through to the question, through to the point where we get that there's a five-year statute of limitations, that it seems to me that you're right so far, meaning, let's say that Korea or some other state requests extradition on the ground of first-degree murder, but the only crime that seems probable cause at all is not even murder at all, but attempted assault, for which it's a fairly minor crime, extraditable, I will assume, but the statute of limitations is a couple of years. It seems to me that an extravagant request that is, say, first-degree murder, it does not entitle the presumption that the statute of limitations for the extravagant request is the applicable statute of limitations, it is the request that can be supported by probable cause. So I'm with you to the point that five years is the right answer. But where you lose me is in the text of the statute, because the text of the statute says extradition may be denied. It doesn't say must be denied. So the question is who gets to deny, and I think I read that as that's an executive branch decision as to whether or not it is or is not denied. That's my problem with your case. Your Honor, I acknowledge that the lower courts also focused on the word may. There are several reasons why may is not determinative here. First, pure canons of treaty interpretation. A treaty is a contract, it's not a statute. We don't apply normal rules of statutory construction to a treaty. So the court must, of course, as the Supreme Court has dictated, look at the text, but the text is not the end of the determination. The court must construe that text consistent with the contracting party's intent, which requires consideration of extra-textual sources. And, Your Honor, and I don't get to look at the extra-statutory sources either. So I'm quite happy to look outside the text. The trouble is it reinforces my reading of may. Your Honor, we disagree. And I would first note that may can be mandatory even for statutes. The Supreme Court has made that clear in Cortes, Birdchips, and also in United States v. Rogers, that there's a common understanding under U.S. law that may means, is a permissive obligation, but it can be overcome even for a statute. If it's contrary to the legislative intent and the object and purposes of the provision. And we would say- You don't have any authority that that's the case here. It's just your interpretation of it. Your interpretation in context. Am I right? Do you have any cases that support your position? Your Honor, you're saying solely within the case? With may? Yes, Your Honor. I cited Johnson v. Wells Fargo, where this court held, and this was very recently, that a provision in the Federal Arbitration Act- I'm not talking about this statute. This treaty, rather. There's no cases on this treaty. No, Your Honor, the only case on this treaty is Manslook v. Torres, where the court engaged in a determination as to whether Article VI applied, and in particular, whether the relator in that case was a fugitive from justice and whether the statute of limitations should be told. And there, as we point out in our briefs, the government didn't raise until oral argument to assert that it was a discretionary rather than a mandatory provision. Your best argument here is the Senate report, with the language that says it precludes extradition of offenses barred by an applicable statute of limitations. I agree, Your Honor. And I have to say that that looks like a really bad reading. It's not unusual in legislative history to end up with a bad reading of a statute. But it does seem to have been explained in other language by the executive branch that was much clearer and seemed to suggest that may meant may and not must. Your Honor, I disagree. And the focus is on the State Department's and the Department of Justice's technical analysis of the treaty, and that this particular portion is found at Government Excerpt of Record 45. And there, they merely parrot the language of the treaty where they state Article VI states it may be denied. They do not, and I would point out in other provisions, they do state that the provision is discretionary. There, there's no indication that they conclude it's discretionary. The focus there is they talk about it being similar to language in other extradition treaties. They cite the Japanese, the Luxembourg Treaty, and the French extradition treaties. And two of them have shall be denied. Luxembourg has may be denied. And, Your Honor, there's no suggestion in this, in the treaty, or in their analysis that they concluded it was discretionary. The concern was that given the differences between Korea's statute of limitations and the U.S.'s statute of limitations, that it would be difficult in implementation, and which we believe supports the argument that it is a mandatory bar subject to conditions. That is consistent with the Executive's reading. And, Your Honor, I would, to the extent the court disagrees and accepts the government's argument that the Executive's technical analysis neither supports nor undermines a discretionary reading, then the court must then look at the Senate's declaration, which was attached to their advice and consent, which again references another treaty, the INF, and I appreciate the court not making me lay out the full name of that treaty, but the condition there is that it will be construed consistent with the common understanding of the U.S. Senate and the President at the time of advice and consent. Let's suppose that we disagree with you and that we affirm the magistrate's decision here. What's the next step? The next step is it has to be approved by the Secretary of State? Yes, Your Honor. The after certification. Is the certification by the Secretary of State personally or is it just by the State Department? Your Honor, it's my understanding it is the Secretary of State. And do you get an opportunity to brief this question before the State Department? Well, Your Honor, I believe this court left this issue open in Trinidad versus rights and the government has, just as a functional matter, I don't think there's anything that we're going to tell. I mean, again, take the hypothesis that we affirm the district, the magistrate here. I doubt that we're going to instruct the Secretary of State in anything. My question to you is, do you get an opportunity to brief the Secretary of State before he makes a decision? No, Your Honor. There is no mechanism provided to relators after the extradition hearing to directly petition the Secretary of State in challenging surrender. I assume that you can send a letter or that you can send some kind of a petition or something to the Secretary of State urging as to why he should not, why he should, in an exercise of his discretion, not extradite your client. You're just telling me there isn't a formal process for doing that. Well, Your Honor, and I would highlight there's no notice. There's no, the government never provides any indication. The only trigger is the 60 days after certification and after the appeals are resolved that they must surrender the individual. The government actually, and based on- The Secretary of State is obligated to respond within 60 days. No, obligated to surrender within 60 days. We're never provided, there's no formal disclosure as to what the Secretary has done. There's no notice whatsoever. And so, Your Honor, to the extent that Mr. Patterson could send a letter blindly to the Secretary I think is really a hollow process. Your Honor, there is no opportunity to challenge it after the fact. And, Your Honor, I, and I acknowledge the court's concerns with regard to the executive technical analysis, but there's also Korea's understanding, and the court can't discount that. Here we're dealing with two sovereign nations. Korea insisted on this provision, and it's very key to note that their domestic law demands denial of extradition whether it violates the statute of limitations in their country or the requesting nation, which would include the U.S. And, Your Honor, that further supports a mandatory direction. Your Honor, I would also, as we point out in the text in determining what Korea and the U.S. met, there are multiple provisions. Article 2, paragraph 4, article 4, paragraph 4, article 13, and article 15 all explicitly reference discretion of the executive authority, and that this provision is silent with regard to executive discretion. And, Your Honor, I think, I mean, even under canons of statutory interpretation, we presume that when a provision has the significant language, and it's in one provision and omitted in another, that it was a deliberate omission and was not intended to confer executive discretion. I see I have two minutes left. Why don't we hear from the other side, and then you'll make sure you've gotten the, we'll make sure you get a chance to say what you need to say. Thank you, Your Honor. May it please the Court, Nancy Spiegel for respondent and colleague. Your Honors, the executive intent of the meaning of the language in a treaty does control unless there's pretty strong evidence on the other side that the words don't have their plain meaning. And I'd like to go through the documents that were before the Senate at the time it passed its resolution, unconditional resolution, to adopt this treaty. So at the beginning, we have a letter of submittal from the President, actually signed by someone from the State Department. And it's a submittal of the documents to the Senate for their consideration. And this can be found at the government's excerpt of record, page 13. And in that submittal, the executive is summarizing the provisions of the treaty. And with regard to Article VI, the language is Article VI permits extradition to be denied. So that is consistent with our position that the term may is a permissive discretionary term. So the next spot. So your argument would be that if it was otherwise, it would say would require.  It's a permit. Yes. Yes, that's exactly right. And what I'm trying to establish here is that the intent of the executive is consistent and clear throughout the documents and has not been contradicted in any sort of clear way by anything that the defense has pointed to. And I'd also like... But you do admit that you're likely to admit then that the Senate report at one sentence is inconsistent with that reading. Correct, but if I could speak to that. You're talking about the language where it says precludes, correct? Okay. First of all, that's not language written by the executive. That's written by someone from the Senate Foreign Relations Committee and it's in the section of the Senate report that summarizes the provisions of the treaty. And if we look at the entire paragraph, what it says is that the treaty precludes extradition. However... What paragraph are you reading? I'm sorry, Your Honor. It's the government's appendix, page 36. And it's under paragraph 8 of the Senate's summary of the provisions. And it's entitled... Now I'm with you. Okay, where it says lapse of time. And if we read the whole thing, not just the first sentence where it says precludes, it's clear that what the purpose of this provision was to be was to give each country the discretion to deny extradition on the basis of statute of limitations, but to respect the law of... Although it appears only to give discretion where somebody's been a fugitive. It looks like there's some tolling of the statute of limitations if somebody has tried to evade their capture. And to the extent that that's the only exception there, it still would seem to be inconsistent with the government's position here. The word precludes is inconsistent. But what the purpose of this provision was, because the tolling provisions in Korea and the United States are so different, Korea wanted to have it clear that each side had the discretion to respect each other's tolling provisions or not. So, for example, in this case, the petitioner's crime... Let's back up. Okay, the petitioner's been certified for extradition for aiding and abetting a second-degree murder. If he were being tried in the United States, the statute has run. And we admit that, and that would be the end of the matter. But under Korean law, the statute has not run. They have a different way of tolling and restarting their statutes. And so the statute there has not run. They can prosecute him under their law. And so the purpose of this treaty provision was to make sure that it would be up to the Secretary of State to decide whether or not the statute of limitations would bar the extradition. Right. But my only point about the lapse of time paragraph is precludes is clearly inconsistent with your theory. And the remaining language does seem to give some discretion to the states. But it only refers to when somebody's been a fugitive. Mr. Patterson has not been a fugitive. They've always known where he was. He's always available if anybody cared to find him. He's not a fugitive. He does not come within what the Senate said they thought was the exception to the precludes language. If we were to read preclude as somehow definitive, and you said, well, you've got some discretion here, he doesn't come within that exercise of discretion. He's not a fugitive. He's not a fugitive. That's correct. He hasn't fled prosecution. You really are sort of stuck with this language. Your principal argument is the precludes language is just a bad reading of this provision. Yes. And it's contradicted by other things that you've already pointed to, namely the documents that were transmitted from the executive plus the summary that's included at the end of that same document. Correct. And again, this is language written by someone on the Senate committee, not by the executive. All of the executives Some of the United States senators didn't sit down and write it. Does that mean that it's not important? No. Of course it doesn't mean that it's not important. It's just that there's nothing else in the Senate report that contradicts the clear meaning of the executive. If you look at the technical analysis provided by the executive that's part of the Senate report, there's an entire couple of three paragraphs. Now I'm at government's appendix, page 45. And the first paragraph, again, restates, you know, the purpose of the may be denied language. The second paragraph is describing the purpose of this provision. And again, at the end of that paragraph, therefore the treaty provides that a request may be denied if it would be time barred in the requested state. But that acts that would toll the statute in either state would be applied by the requested state. Meaning, again, that it's up to the Secretary of State in his discretion to make this determination. And do you agree with Mr. Harbaugh's description of what happens if we were to affirm the magistrate judge here as to what happens from here? No. We don't agree with that. The case does, yes, go to the State Department for the final determination. But my understanding is that the State Department looks anew and analyzes the case. They look at every single piece of paper. Does Mr. Patterson have any opportunity to send a petition in or to send materials in? Yes, he absolutely does. Do they get notice from the State Department that they're under consideration of where to send it? That I don't know. I could find out. I don't know that at the present moment. But what I was told by a member of the State Department was that they will look at anything submitted by the petitioner, by his lawyer. There's no formal process. In other words, there's no formal briefing process. But that any piece of paper submitted will be analyzed. And that part of the analysis and part of why it's important that this provision be read to be discretionary is that under the statute, under 18 U.S.C. 3186, it is the Secretary of State's ultimate decision whether or not to surrender this petitioner for extradition. And part of the concerns are things that have not been considered before. Fairness is part of the concern. Maybe the Secretary of State will say, you know, this crime happened a long time ago. We're not going to extradite the petitioner because of that. Or maybe, you know, because he couldn't be prosecuted here, we're not going to extradite him. But that's where the decision making rests. You know, this the facts of this case kind of bring this whole thing into some stark light. Because it isn't a situation where the serviceman is over there he's alleged to have done something. He comes back to the United States and six months later, Korea says, we want him back again. I mean, here you have this stabbing that occurs in this restroom. There's two people involved along with a decedent and one gets charged. He gets convicted. That's set aside on appeal. He then gets retried and acquitted. So he's free. I don't know where he is, but he's free. Mr. Patterson apparently pleads guilty to some very minor offense. Yes, destruction of evidence. Destruction of evidence having to do with the knife, I think. Correct. And then they don't pursue it. He comes back and he's here for a decade. And then they allegedly, some television show brings this situation to light and all of a sudden, Korea wants him back again. That's all correct. That is all correct. And again, all of those factors will be considered in this next phase. Assume that your construction of the treaty is right, and that is that the word may has an ordinary meaning, that is to say that extradition can be denied on this ground, but it need not be Why isn't it available to the judiciary to say, well this is available to us as a ground for not extraditing and we're not going to do it? Why is that a decision that's reserved only to the executive? Why is that may directed only to the executive for the final decision on the point? Because it is the executive and the Secretary of State under statute under 3184 and 3186 that has the ultimate decision making discretionary power. The power that the courts have is something that's been delegated to the judiciary by the executive. And it is a limited power How do I know that it contains that limitation that say that the magistrate judge or us or whoever it is in the judiciary we don't get to decide the may part of it? If I have the discretion to decide whether or not he should be extradited Tell me more about why we don't have the discretion to exercise the decision under the may. Because it's been decided under the Constitution and the statutes that this is matters of treaties and treaty interpretation are different from statutes because they involve issues of foreign policy political considerations But we're interpreting the statute I'm assuming that I interpret the statute your way which is to say that extradition may take place it may be barred that's up to somebody to make a discretionary decision. I got that. But we're asked to interpret the treaty which I just did. Next question is who gets to decide under the may and I understand the thrust of this but I'm trying to figure out chapter and verse as to why that decision has to be made by the Secretary of State or the executive rather than by the court. I hope I understand this correctly Let me say it again I'm not trying to be obscure and I think I know the answer but I'm trying to nail it down as to why it's the answer Somebody has the discretion under this interpretation of the statute whether to extradite or not Correct And I'm with you so far My question is how do we know that it's the Secretary of State or the executive that has the discretion rather than the court Because under 3184 the court's job is to determine whether or not the case should be certified for extradition and then it passes on So part of that decision at the magistrate judge level is probable cause interpretation of the treaty excuse me and what it means and whether or not the crime falls within the treaty those sorts of determinations So as you say 3184 is the answer to the question So if we found the magistrate judge acted in error then what would happen If we did I'm going to say we are Yes Well it depends I think if you decided that the magistrate acted in error by not looking at other sources to make his determination then it could go back for a re-hearing if the determination was the magistrate judge erred in his decision ultimate decision that the provision was discretionary rather than mandatory then We don't have the authority you're not conceding that we have the authority to decide if we decide that the answer is may means may and not shall we don't have the discretion to exercise may or may not Correct. That would be entirely up to the secretary Right correct if this court affirmed magistrate judge's decision which is what the government urges the next step would be that this would move to the secretary of state state department the entirety of what may happen here there's also a status of forces agreement correct and as I read the status of forces agreement there's a prohibition against violation of double jeopardy I don't think that I get to enforce the status of forces agreement there's a special committee that does that that's correct do you know if there's any proceeding in front of that committee under the status of forces agreement at the present time this sure looks like double jeopardy to me but I don't think I have the jurisdiction to say this I'm just asking is something happening under the status of forces agreement my understanding is that nothing will happen unless until and unless he is actually extradited and then he can raise the claim there in Korea under the statute of forces agreement and the dispute would be determined by that committee that's specified in the SOFA thank you your honor your honor I'd just like to address two points the government raised first the government argues that Korea wanted it to be discretionary the report particularly the technical analysis page 45 directly undermines that Korea demanded it because their law demanded it for violations under either state law so they didn't intend for it to be discretionary because their law is different than the U.S. as I read that part of that I don't know what they call it the technical analysis well you kind of have an executive summary at the beginning that uses the word precludes and then we have the explanation later on and you're referring to this second paragraph in the explanation as I read it what Korea wanted and got was the authority to deny extradition and the may fully accomplishes that because if they don't want to extradite nothing requires them to do it your honor and I would disagree because I don't think it doesn't appear that Korea wanted to provide discretion to the United States but hamstring themselves in making this determination no they wanted not to hamstring themselves and that's what they got they don't have to extradite your honor I see your point I don't agree but the final point I would like to address is that the government emphasizes that it's really important that this type of provision be discretionary as cited in our brief this provision is ubiquitous in extradition treaties that it is traditionally considered a defense that the court makes that determination just like the court decides traditionally whether a statute of limitations has expired under U.S. law and so it is not a type of provision such as a capital punishment provision where policy considerations come into play here the issue is very clear and discreet whether it's violated or not and we believe that this case typifies why this needs to be a mandatory provision and not discretionary leaving it up to political considerations where a U.S. citizen is drugged back into court a second time a decade later to face a charge he already was concluded to not have committed in finding him guilty of destruction of evidence your honor this to allow the government to simply leave it up to discretion and be more concerned about foreign policy relations undermines the essence of this lapse of time provision thank you thank both sides for very good arguments case of Patterson vs. Wagner is now submitted for decision and that completes our calendar for this week
judges: Ezra, Fletcher, Bybee